FEATHERMAN ET AL., PLAINTIFFS, *v.* HENNESSY ET AL., DEFENDANTS; McGOWAN, APPELLANT; ORO Y PLATA MINING CO., RESPONDENT.

(No. 2,885.)

(Submitted January 28, 1911.   Decided February 8, 1911.)

[113 Pac. 751.]

*Waters and Water Rights—Abandonment—Adverse Use—Statute of Frauds—Contracts—Validity—Right to Question—Appeal—Party not Aggrieved.*

Contracts—Statute of Frauds—Right to Invoke.
1.   The right to question the validity of a contract on the ground that it falls within the statute of frauds is personal and cannot be asserted by one who is neither a party nor a privy to it.

Same—Water Rights—Oral Conveyances.

2. *Held,* under the rule above, that appellant in a water right suit was in no position to attack the validity of the decree, on the alleged ground that respondent mining company, having become the owner of certain placer claims to which the rights adjudged to it were appurtenant, by word of mouth, such transfers were void under the statute of frauds, and therefore that it had failed to connect itself with the title to the waters claimed and awarded to it.

Water Rights—Abandonment—How Determined.

3. The question whether there was an abandonment of a water right is one of fact, to be determined by the acts and intention of the claimant, mere lapse of time during which there was nonuser being insufficient to establish it.

Same—Abandonment—Evidence—Insufficiency.

4. Evidence examined and *held* to negative the idea that the claimant of a water right had any intention to abandon such right.

Same—Adverse User—What Constitutes.

5. The use of water does not become adverse as against a prior appropriator unless it deprives him of its use when he has actual need of it, or amounts to such an invasion of the latter's rights as will enable him at any time during the statutory period to maintain an action against the adverse user.

Same—Decree—Appeal—Party Aggrieved.

6. Where a party to a water right suit fails to show that the quantity of water to which he is entitled has not always reached the head of his ditch whenever he had occasion to use it, he is not aggrieved by the decree and therefore not in a position to complain of it on appeal.

· *Appeal from District Court, Granite County; Geo. B. Winston, Judge.*

ACTION by John A. Featherman and others against D. W. Hennessy and others. From a judgment establishing the relative water rights of the defendants James McGowan and the Oro y Plata Mining Company, and an order denying him a new trial, McGowan appeals. Affirmed.

In behalf of Appellant, there was a brief and reply brief, as well as oral argument, by *Mr. W. E. Moore.*

*Mr. George A. Maywood,* and *Mr. William T. Pigott,* submitted a brief in behalf of Respondent, and both argued the cause orally.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was brought by John A. Featherman and five other plaintiffs against appellant James McGowan, the respond-

ent Oro y Plata Mining Company, and thirty-five other de-
fendants, to obtain a decree determining the respective rights
of the parties to the use of the water flowing in Flint creek, in
Granite county.   All of the defendants answered, setting forth
the rights claimed by them, and alleging priority of appropria-
tion and use of specific quantities of water as against the plain-
tiffs, as well as against each other.   Under a stipulation signed
by the attorneys of all the parties, all affirmative matter alleged
by any defendant was deemed denied by the plaintiffs and the
other defendants, and each party was accorded the right to
introduce, as against the claim of any other, evidence tending
to show an abandonment or nonuser by such other party, or to
establish a prescriptive right in himself by adverse use.   Upon
the issues so framed, the court made findings of fact and con-
clusions of law, and rendered a decree fixing the dates and
amounts of the respective appropriations, and enjoining each
of the parties from interfering with the right of any other.   The
decree awards to appellant, for agricultural and domestic use,
two hundred and sixty inches, appropriated and diverted on
April 23, 1888; fifty inches for a like use, under a second ap-
propriation made April 1, 1892; sixty-five inches under a third,
made on May 1, 1893; and sixty inches under a fourth, made
August 1, 1902.   It awards to the respondent Oro y Plata Min-
ing Company five hundred inches, appropriated and diverted
on July 19, 1869.   Inasmuch as it was found that the prede-
cessors of respondent had appropriated this amount for the
purpose of placer mining only and had used it exclusively for
this purpose, allowing it to return to the body of the stream
to be recaptured by others residing below the place of use, the
respondent is required to confine its use exclusively to this pur-
pose as heretofore, except that it may change the use to any
other purpose which will not result in detriment to appropri-
ations made below this point.   The appeals are by McGowan
from that portion of the decree awarding to the respondent min-
ing company the right referred to, and from an order denying
his motion for a new trial.

The contention made by appellant is that the evidence is insufficient to justify the findings in favor of the respondent. He submits three queries and contends that, while all should be answered in the affirmative, an affirmative answer to any one of them will be fatal to the right of respondent as adjudged in the decree. These queries are the following:

"First. Is not the claim of the respondent lost by failure to deraign title to the water right claimed by it?

"Second. Is not the claim of the respondent lost by reason of abandonment and nonuser?

"Third. Is not the claim of the respondent lost by reason of the statute of limitations?"

1. Flint creek flows north through Flint creek valley. The ditches of both appellant and respondent are taken from it on the west side. Respondent owns placer mines situated near the mouth of Henderson gulch, which opens into the valley from the west. A plat submitted with the transcript shows that the head of its ditch is some three or four miles above the mouth of the gulch. The country through which it is constructed is broken by ravines and gulches, which it is necessary to bridge with flumes. It appears that in November, 1868, Thomas Smith, one of the original defendants to this action, now dead, with six associates began the construction of the ditch to convey water to the placer mines mentioned above, then owned by them. It was finished in the following year. Mining operations were conducted there by these original owners until 1876 or 1877, when one Ferguson, and others associated with him, purchased the mines, with the ditch and water right. In the year 1878 they sold the property to a Chinaman by the name of Quong Lee. Four years later the latter sold to two other Chinamen, Buck Jim and You Hoy, who, having operated the property until 1888 or 1889, sold to Dominick Byrne. The respondent thereafter became his successor to an undivided three-fourths interest by mesne conveyances. It is not clear from the evidence whether any of the conveyances referred to, down to the time Byrne became the purchaser, were evidenced by any sort of

writing. It is clear, however, that in each case a consideration was paid by the purchaser, or purchasers, who at once went into possession. The conveyance to Byrne was by deed duly executed. So, also, were all the conveyances by which respondent became his successor.

The contention made by counsel is that, since it appears that the conveyances by Smith and his associates, and by Ferguson and Quong Lee, under which Buck Jim and You Hoy claimed title, were by mere word of mouth and not in writing, the respondent has failed to connect itself with the original title of Smith and his associates, and therefore that its claim falls to the ground; in other words, these conveyances were void because within the statute of frauds. No objection was made at the trial, by appellant, to any of the evidence offered to establish these conveyances. It would seem that he ought not to be heard to make objection for the first time in this court; but, even so, such an objection would not have been well made. Appellant was a stranger to all of these conveyances; nor has he, by anything that has occurred since, been brought into privity with any of the parties to them. Being a stranger, he cannot be heard to object to them. The right to question a contract on the ground stated is purely personal, and cannot be asserted by one who is neither a party nor a privy to it. (*McDonald* v. *Lannen,* 19 Mont. 78, 47 Pac. 648; *Wood* v. *Lowney,* 20 Mont. 273, 50 Pac. 794.) And this is declared by the courts generally to be the settled rule. (*Book* v. *Justice Mining Co.* (C. C.), 58 Fed. 106; *Murray Hill Co.* v. *Havenor,* 24 Utah, 73, 66 Pac. 762; *Hill* v. *Groesbeck,* 29 Colo. 161, 67 Pac. 167; *Jackson* v. *Stanfield,* 137 Ind. 592, 36 N. E. 345, 37 N. E. 14, 23 L. R. A. 588; *Daum* v. *Conley,* 27 Colo. 56, 59 Pac. 753; 20 Cyc. 306; Wood on Statute of Frauds, sec. 538.)

In *Jackson* v. *Stanfield, supra,* in the opinion on rehearing, the court in stating the rule uses this apt language: "Parties to contracts and their privies can alone take advantage of the fact that a contract is invalid under the statute of frauds. Many forms of expression by this and other courts illustrate

the doctrine that a third person cannot make the statute of frauds available to overthrow a transaction between other persons; that the defense of this statute is purely a personal one, and cannot be made by strangers. (Citing cases.) It concerns the remedy alone, and the modern law is well settled that, in the absence of a statutory provision to the contrary, the effect of the statute is not to render the agreement void, but simply to prevent its direct enforcement by the parties, and to refuse damages for its breach."

It is true that in *McDonald* v. *Lannen, supra,* this court used expressions which would indicate that a different rule applies to mining claims and appurtenant rights from that which applies to mere possessory rights and improvements upon agricultural lands not held by formal entry. But we cannot see any substantial reason for the distinction. If the right to question the validity of a conveyance is a personal one, available only to the parties or their privies, it is none the less personal where the parties are dealing with property to which the seller holds the absolute fee. If strangers cannot object that the law has not been observed in the one case, neither may they in the other. In *Head* v. *Hale,* 38 Mont. 302, 100 Pac. 222, this court recognized the rule stated in the text in Farnham on Waters, sec. 670a, that one who is in possession of a water right originated by another cannot protect or defend it, unless he is in privity, by contract or otherwise, with the original owner. Nothing said in that case, however, is in any way inconsistent with the rule stated above.

The first query submitted by the appellant must, therefore, be answered in the negative.

2. The same answer must also be made to the second. Whether there has been an abandonment is a question of fact, to be determined by the acts and intention of the person against whom it is alleged. Mere lapse of time during which there is nonuser is not sufficient. The circumstances must be such as to justify an inference of intention to abandon; in other words, to leave the property to be taken by any other person who

chooses to do so.    (*Gassert* v. *Noyes,* 18 Mont. 216, 44 Pac. 959;
*Smith* v. *Hope Mining Co.,* 18 Mont. 432, 45 Pac. 632; *Sloan*
v. *Glancy,* 19 Mont. 70, 47 Pac. 334; *Watts* v. *Spencer,* 51 Or.
262, 94 Pac. 39; *Beaver Brook Co.* v. *Reservoir Co.,* 6 Colo. App.
130, 40 Pac. 1066.)    The most that the evidence shows on this
point is that a high flume constructed across a ravine, in order
to convey water to the bar at the mouth of Henderson gulch,
was broken down in 1888, that the mines were not thereafter
worked, and that the water was not used elsewhere until 1894.
Yet it does appear that work was done with more or less con-
tinuity until 1888, and that in 1894 the ditch and some of the
flumes were repaired.    The water was thereafter used by other
persons, by permission of the respondent or its predecessors, to
work other mines situated on Smart creek, another confluent of
Flint creek above Henderson gulch.    It also appears that in the
meantime Byrne, while he was the exclusive owner, with the
idea of "representing" the right, as some of the witnesses stated,
and thus preserving it, turned water into the ditch from year
to year, which, after running down for some distance, escaped
again into Flint creek.    While evidence of this practice by
Byrne is worthless for any other purpose, it, together with the
fact that he thereafter conveyed to other parties an interest in
the property, negatives the notion that he had any intention to
abandon it in 1888, when the flume was broken down, or after-
ward.

3. There is no evidence in the record tending to show adverse
use by the appellant.    It does appear that no use of the water
was made by any predecessor of respondent from 1888 to 1894,
and that little effective use has been made of it since the latter
date.    But use of water does not begin to be adverse as against
a prior appropriator, unless it results in a deprivation to such
appropriator, or amounts to such an invasion of his rights as
will enable him at any time during the statutory period to
maintain an action against the adverse user.    In *Bullerdick* v.
*Hermsmeyer,* 32 Mont. 541, 81 Pac. 334, it was said: "The use
of the waters in the streams in this state is declared by the Con-

stitution to be a public use. (Constitution, Art. III, sec. 15.) Such being the case, every citizen has a right to divert and use them, so long as he does not infringe upon the rights of some other citizen who has acquired a prior right by appropriation. Each citizen may divert and use them without let or hindrance when no prior right prevents. When his necessary use ceases, he must restore them to the channel of the stream; whereupon they may be used by any other person who needs them. In no case does such use become adverse until some superior right is infringed and the owner of it suffers deprivation. If it becomes and continues adverse and exclusive for the full period prescribed by the statute, and the owner suffers the consequent deprivation, such use ripens into a right by prescription.''

In *Talbott* v. *Butte City Water Co.,* 29 Mont. 17, 73 Pac. 1111, we find this language: "The plaintiffs had use for the water only for agricultural and mining purposes, and, when not so using it, the law required them to turn it back into the stream for the use of this defendant, or any other person or corporation which might have a right to use it. No use of water by a subsequent appropriator can be said to be adverse to the right of a prior appropriator, unless such use deprives the prior appropriator of it when he has actual need of it. To take the water when the prior appropriator has no use for it invades no right of his, and cannot even initiate a claim adverse to him." See, also, *Smith* v. *Duff,* 39 Mont. 374, 102 Pac. 981, 133 Am. St. Rep. 582, where these cases are cited with approval. We think they state the correct rule. The third query proposed by appellant must, therefore, also be answered in the negative.

4. But waiving aside all the foregoing considerations, it does not appear that the appellant is aggrieved in any way by the decree. The plat shows that whenever water has been diverted by the respondent or any of its predecessors, it has been returned to the body of the stream at some distance above the head of appellant's ditch. Appellant does not show or claim that the quantity of water to which he is entitled has not always reached the head of his ditch whenever he has had occasion to use it.

(*Kelly* v. *Granite Bi-Metallic C. Min. Co.,* 41 Mont. 1, 108 Pac. 785.)

These conclusions render it unnecessary to determine the questions of practice presented by respondent.

The judgment and order are affirmed.

*Affirmed.*

MR. JUSTICE SMITH concurs.

MR. JUSTICE HOLLOWAY did not hear the argument, and takes no part in the foregoing decision.